**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL STARNER,** | : | **Civil No. 1:11-CV-2249** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

#### A.    Introduction

This case comes before the Court for evaluation of an Administrative Law Judge's decision denying social security disability benefits to the plaintiff, Paul Starner. That ALJ decision was made against a factual backdrop marked by conflicting and inconsistent evidence relating to Starner's medical condition, and mental health. Upon consideration, for the reasons set forth below, we conclude that the ALJ's decision is supported by substantial evidence which is adequately explained on the record and, therefore, we recommend that this decision be affirmed.

### B.  Starner's Medical and Employment History

In February of 2009, Paul Starner applied for social security disability benefits. (Tr. 180.)  At the time that of this application, Starner was 38 years old and was defined as a "younger individual" by Social Security Regulations.  (Id.)  Starner was a high school graduate, who reported that he had normal schooling experience, attained good grades, and experienced no behavioral problems in school.  (Tr. 752.) Prior to the onset of his medical and psychiatric concerns, Starner had worked at a home improvement store, serving as a cashier and supervisor, but Starner reported that he had not been gainfully employed since 1999.  (Tr. 209, 258.)

Starner initially alleged that he became disabled due to an array of different mental and physical impairments, (Tr. 192.), and medical records revealed that Starner sought medical care from a number of health care providers over the years. These medical records, however, presented a profoundly mixed picture of Starner's health and the degree to which he was disabled.  For example, from 2004 through 2009, Starner's primary care physicians were located at Mill Creek Family Medicine. Records of this facility revealed that Starner was treated primarily for a variety of relatively minor medical conditions during this time including complaints of irregular heartbeat in February 2008 (Tr. 625.); vertigo in March 2008 (Tr. 624.); constipation in April 2008 (Tr. 623.); sinus congestion in May 2008 (Tr. 622.); heat

exhaustion in June 2008 (Tr. 621.); nervousness and thrush in July 2008 (Tr. 620.); regular check-up visits in August, September, and October 2008 (Tr. 616-17, 619.); and a diabetes follow-up appointment in December 2008 (Tr. 615.). Starner's diabetes, which was one of the principal ailments reported by the plaintiff in his disability application, was described by Starner to be largely controlled through diet. Indeed, Starner reported in his disability report that, with respect to the diabetes, he stopped seeing an endocrinologist in 2008 because "I have bben [sic] able to get my diabetes numbers in better control." (Tr. 196.) Starner's self-reported medical history also reflected that the plaintiff frequently sought the views of multiple care-givers, often voiced dissatisfaction with the medical advice her received, and occasionally tended to conduct independent Internet research into his symptoms and medication. (Tr. 191-208.)

Notably absent from Starner's primary care physician records were two things: First, the records did not any indication of an urgent need to medically intervene on profound medical or psychiatric issues. Instead, the medical records generally reflected a conservative course of treatment for an array of concerns voiced by Starner. In addition, the primary care physician records did not seem to include any documentation from Starner's physicians opining that his medical and emotional issues were wholly disabling.

Starner's frequent contacts with other health care providers resulted in extensive, but equivocal documentation regarding Starner's medical condition and treatment. For example, in May 2008, radiological reports identified no gross skeletal abnormalities, revealing that Starner had no acute abnormality of the lumbar spine, while disclosing some mild disc degeneration of plaintiff's thoracic spine (Tr. 448, 449.)

Neurological examinations of Starner were similarly unremarkable. Thus, in May 2008, Starner was seen by James Gilhool, D.O., to address neurologic symptoms (Tr. 442-44.). Although Starner complained of leg pain, he noted that the pain "faded away" on the left side because he had lost weight (Tr. 442.). An electromyographic study suggested poylneuropathy, most likely resulting from plaintiff's uncontrolled diabetes. (Tr. 444.) Following his examination, Dr. Gilhool had no radiculopathic concerns, and he advised Starner to adopt a consistent exercise routine. (Tr. 444.)

Likewise in October 2008, when Starner received treatment for calluses on his feet, it was observed that he walked with a normal angle and gait, and that manual muscle testing of Starner was 5/5 for all lower extremity musculature. (Tr. 441.) Similarly in February 2009, when Starner sought received treatment at York Hospital for a possible hernia, an examination revealed no obvious defects, (Tr. 587.), a sonography did not disclose any evidence of hernia or soft tissue mass, (Tr. 572.), and

Starner was simply diagnosed with a likely muscle strain. (Tr. 587.) Two months later, in April 2009, plaintiff visited York Memorial Hospital again complaining of chest discomfort. (Tr. 731). He described a dull, non-radiating pain on the right side of his chest. (Tr. 733.) On physical examination, Starner was described as awake, alert, lucid, and conversant, Starner's physical examination was unremarkable, and an EKG revealed normal sinus rhythm and tracings. (Tr. 734) The attending physician determined that Starner did not have any symptoms or exam findings consistent with serious etiology, and determined that Starner's symptoms were "resolved." (Tr. 734-35.) One month later, in May 2009, Starner returned to York Memorial Hospital with complaints of pelvic pain. (Tr. 729.) Radiologic images revealed that Starner's internal organs were "unremarkable," (Tr. 729.), and the treating physician found that Starner had "no acute intra-abdominal inflammatory process." (Id.)

These equivocal medical reports were further mirrored by the medical assessments of Starner undertaken in connection with his application for disability benefits. Four such assessments were conducted as part of this disability application process. Three of these assessments concluded that Starner had the residual capacity to perform some work; only one assessment supported Starner's claim of disability.

Thus, in June 2009, state agency physician Candelaria Legaspi, M.D., reviewed the evidence and opined that plaintiff could perform medium work. (Tr. 790-96.) In reaching this conclusion, Dr. Legaspi noted that Starner's treatment for his various symptoms has generally been successful; that Starner did not require an assistive device to ambulate; and that Starner was not prescribed strong medication for his pain. (Tr. 796.) State agency psychologist, Roger Fretz, Ph.D., also reviewed the evidence and assessed Starner's work capacity in June 2009, (Tr. 773-76.), opining that Starner could meet the demands of competitive work on a sustained basis despite his limitations. (Tr. 776.) In this regard, Dr. Fretz noted that Starner was able to perform activities of daily living, and spent expensive time on the computer. (Tr. 775.) Dr. Fretz determined that the evidence indicated that Starner was either not significantly limited or only moderately limited in all areas of mental functioning, (Tr. 773-74.), and found that Starner could carry out very short and simple instructions, maintain regular attendance and be punctual. (Tr. 775.) According to Dr. Fretz Starner's anxiety disorder caused mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; and moderate limitations in maintaining concentration, persistence, or pace, limitations which did not rise to the level of disabling conditions. (Tr. 782, 787.)

A third functional assessment supported these findings that Starner was not disabled. In June 2009, Phuoc Le, M.D., conducted an independent, medical evaluation of Starner, obtaining information directly from Starner as well as from outside records. (Tr. 760.) Dr. Le noted that Starner only took two medications daily: Armour thyroid medication and Allopurinol. (Tr. 761.) While Starner complained of a history of headaches, he also noted that over-the-counter medicine provided good relief. (Tr. 760.)

With respect to his emotional state, Starner reported a history of mood disorder, and exhibited nervousness during the evaluation, but denied having unremitting sadness, apathy, anhedonia, insomnia, or changes in appetite, and Dr. Le observed no clear periods of euphoria or classic manic symptoms. (Tr. 761.) Dr. Le further noted that Starner was not treating with a psychiatrist or counselor. (Tr. 761.) Rather, Dr. Le described Starner as pleasant, alert, and cooperative during the examination, and found that his thought process was as coherent and logical. (Tr. 764.)

As for Starner's diabetes, Dr. Le found that Starner had been diagnosed with type two diabetes three year earlier, (Tr. 761.), but observed that Starner denied any known complications of diabetic retinopathy or nephropathy. (Tr.761.) Thus, Dr. Le described plaintiff's diabetes as "diet controlled". (Tr. 765.)

Finally, on examination, Dr. Le found no signs of spinal deformities or tenderness. (Tr.764.) Instead, he observed that Starner was able to rise up from a chair and able to climb on and off the examination table with relative ease (Tr. 763.); noted that Starner was in no acute distress, had normal knees, hips, and ankles with no effusion, crepitations, or joint laxity or tenderness, and had no pedal edema, cyanosis, or ulcers in the lower extremities. (Tr. 16, 761-65.) Further, Starner experienced no muscle atrophy, was normal in gait and station, was able to heel and toe walk and squat and kneel, and had normal motor strength. (Tr. 761-65.) Based upon his physical examination, Dr. Le determined that plaintiff had the functional capacity to perform light work. (Tr. 766-67.)

One countervailing expert opinion presented a less favorable assessment on Starner's mental state. In June 2009, Starner underwent a psychiatric consultative examination with John Tardibuono, D.Ed. (Tr. 750.) On examination, Dr. Tardibuono found that plaintiff had low/average to average cognitive ability. (Tr. 753.) He opined that Starner had a number of moderate and marked limitations in his ability to do work-related activities, (Tr. 756.), and assigned a Global Assessment Functioning, or GAF, score of 44 to Starner. (Tr. 754.)[1]

---

[1] GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness and is not supposed to include the

## C.    The ALJ Hearing and Decision

It was against the backdrop of this equivocal record regarding Starner's physical and mental condition that the ALJ conducted a July 2010 hearing in this case.  On August 20, 2010, the ALJ issued a decision in this matter.  (Tr. 7-18.)  In that ruling, the ALJ assessed both Starner's physical and emotional conditions, and discussed the competing, conflicting and countervailing evidence regarding these various conditions.  The ALJ carefully assessed the medical evidence supporting Starner's claim, including the evaluation of Dr. Tardibuono, but ultimately rejected that assessment, finding that it was largely based on the plaintiff's subjective

---

consideration of impairment in functioning due to physical (or environmental) limitations. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000.  ("DSM-IV-TR").  In this regard, it should be noted that GAF scores "in the range of 61–70 indicate 'some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning.'  Diagnostic and Statistical Manual of Mental Disorders ('DSM IV') 34 (American Psychiatric Assoc.2000). GAF scores in the 51–60 range indicate [only] moderate impairment in social or occupational functioning."  Cherry v. Barnhart, 29 F. App'x 898, 900 (3d Cir.2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL 6137324 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v. Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012).  A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34.  A score of 50 is on the borderline between serious and moderate symptoms."  Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006).

complaints, complaints that were inconsistent with multiple clinical findings set forth in medical records, and with other medical and physical evaluations of the plaintiff. (Id.) The ALJ also independently assessed the degree to which any psychological impairments may have contributed to Starner's disability. In evaluating Starner's psychological condition, the ALJ noted that Starner had been assessed with a GAF score of 44 on one occasion, but concluded that this single score overstated Starner's level of impairment when assessed against other medical evidence and Starner's reported levels of personal activity. The ALJ then found that Starner could perform light work subject to certain limitations. (Tr. 14.) Having determined that Starner was capable of performing light work, the ALJ concluded that jobs existed in the national, state and local economy for persons with residual functional capacities like those exhibited by the plaintiff. (Id.) On the basis of these findings, the ALJ denied Starner's claim. (Id.)

Starner sought administrative review of this adverse decision and the Appeals Council denied plaintiff's request for review, making it the final decision of the Commissioner. This appeal followed. (Doc. 1.) The parties have fully briefed this matter, and this case is now ripe for resolution. For the reasons set forth below, we find that substantial evidence supports the ALJ findings in this case; that those findings are adequately explained on the record; and that the findings reflect an

appropriate assessment of all of the medical evidence, including the treating physician's reports. Therefore, it is recommended that this appeal be denied.

## II.    Discussion

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes

11

of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's

abilities, age, education, and work experience can perform. Mason v. Shalala, 994

F.2d 1058, 1064 (3d Cir. 1993).

Moreover, where a disability determination turns on an assessment of the level

of a claimant's pain, the Social Security Regulations provide a framework under

which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529.

Such cases require the ALJ to "evaluate the intensity and persistence of the pain or

symptom, and the extent to which it affects the individual's ability to work."

Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment

of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent

to which a claimant is accurately stating the degree of pain or the extent to which he

or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by

regulations. This guidance eschews wholly subjective assessments of a claimant's

pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's

statement as to pain or other symptoms shall not alone be conclusive evidence of

disability as defined in this section; there must be medical signs and findings,

established by medically acceptable clinical or laboratory diagnostic techniques,

which show the existence of a medical impairment that results from anatomical,

physiological, or psychological abnormalities which could reasonably be expected to

produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's

statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

In addition, when considering disability claims that rest, in part, on mental health considerations, "[w]hile the mere presence of a mental disturbance does not automatically indicate a severe disability, it cannot be ignored by the ALJ. Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir.1988)." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999). Instead, "[t]he ALJ has a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work. See, e.g., Stambaugh on Behalf of Stambaugh v. Sullivan, 929 F.2d 292, 295 (7th Cir.1991); Hill v. Sullivan,

924 F.2d 972, 974 (10th Cir.1991)." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999). Furthermore, "[w]hen there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a. Andrade v. Secretary of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir.1993). These procedures are intended to ensure a claimant's mental health impairments are given serious consideration . . . in determining whether a claimant is disabled." Plummer v. Apfel, 186 F.3d 422, 432 (3d Cir. 1999). "The ALJ must give all the evidence in the record the serious consideration required by law." Id. The applicable regulation, 20 C.F.R. § 404.1520a, permits an assessment of the severity of mental impairments to be documented by examining state agency psychological consultants, and further enjoins the ALJ to incorporate in any written decision "examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4). In this regard, the ALJ's decision should rate the degree of limitation experienced by the claimant in  activities of daily living; social functioning; and concentration, persistence, or pace, as well as assessing any episodes of decompensation. 20 C.F.R. § 404.1520a(c).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.   Most significant among these legal benchmarks is a

requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether

the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based

on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### B. The ALJ's Decision Was Supported By Substantial Evidence

Judged against this deferential standard of review we find that the ALJ's disability decision in this case was supported by "substantial evidence" and, therefore, may not now be disturbed. Indeed, given the many conflicting and contradictory threads in the evidence presented to the ALJ, this ruling reflects a thorough, careful, balanced analysis of the proof. It is, therefore, the paradigm of a decision which draws carefully upon substantial evidence.

1. **The ALJ Did Not Err in Her Step-Three Analysis of Starner's Claims**

At the outset, in this appeal Starner contends that the ALJ erred at step three of this five-step sequential analysis when she failed to find that Starner's diabetes and emotional difficulties were *per se* disabling in that they met or equaled a listed impairment set forth at Listing 12.06, *Anxiety-Related Disorders*, or Listing 9.08, *Diabetes Mellitus* See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 9.08 and 12.06.

This argument merits only brief consideration. It is well-settled that the purpose of the Listing of Impairments is to describe impairments "severe enough to prevent a person from doing any gainful activity," regardless of age, education or work experience. 20 C.F.R. § 416.925(a); see also, Sullivan v. Zebley, 493 U.S. 521, 532 (1990). "For a claimant to show that [his] impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify (emphasis in original)." Zebley, 493 at 530; see also, Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). The claimant bears the burden of proving that his impairment meets or equals a listing. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007). Where a disability claimant does not show that he has met all of the listed criteria, an ALJ should rule in favor of the

Commissioner at step three of this analytical process. See Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007)(denying disability finding at step 3 based upon diabetes); Small v. Comm'r of Soc. Sec. Admin., 60 F. App'x 919, 922 (3d Cir. 2003).

Here, none of the psychological evidence presented to the ALJ would have supported a finding that Starner suffered from marked impairments in all of these following areas–activities of daily living; marked difficulties in social functioning; or marked difficulties in maintaining concentration, persistence or pace. These factors are the benchmarks which must be met at step three of this sequential analysis for a disability finding premised on mental health concerns. 20C.F.R. pt. 404, subpt. P, app. 1, § 12.06. Quite the contrary, the evidence show, at best, that only some of these diagnostic criteria were met in Starner's case, a finding which would not warrant a decision in Starner's favor at step three of this sequential analysis, where Starner must show that he meets all of the listed criteria.

Nor did Starner carry his burden at step three of showing that his diabetes was wholly disabling since there was no medical evidence which established that Starner had the type of profound and disabling diabetes symptoms required by Listing 9.08. 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08(A). No examining sources reported such findings and at Starner's consultative examination, Dr. Le noted that Starner denied

any complications from diabetic retinopathy or nephropathy. (Tr. 761.) Instead, Dr. Le found that Starner's diabetes, diagnosed only three years earlier, was "diet controlled," (Tr. 761, 765.), and Starner himself reported that he stopped seeing an endocrinologist in 2008 because "I have bben [sic] able to get my diabetes numbers in better control." (Tr. 196.). Thus, the ALJ correctly concluded that Starner had failed to satisfy the criteria of Listing 9.08(A) for diabetes.

## 2. There Is Substantial Evidence Supporting the ALJ's Conclusion That Starner's Physical and Emotional Limitations Were Not Disabling

As to Starner's overall claims of physical disability, as we have noted, this decision involved an assessment of conflicting and equivocal medical evidence. This evidence showed that the plaintiff's subjective complaints were not supported by independent diagnostic evidence and testing. Since "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged," 42 U.S.C. § 423(d)(5)(A), the results of these diagnostic tests, which did not confirm the type of abnormalities which would sustain the plaintiff's reports of pain, constituted "substantial evidence" supporting the ALJ's finding.

Similarly, the ALJ's assessment of the competing medical evidence rested upon sufficient "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Johnson, 529 F.3d at 200, and, therefore, was supported by "substantial evidence." In this case, the ALJ correctly noted that the plaintiff's complaints were not consistently supported by medical treatment records. In the absence of a treating physician's assessment, the ALJ then determined that the various consulting medical opinions which found that Starner retained some residual capacity to work drew greater and more persuasive support from the evidence. Given these conflicts in the evidence, the ALJ as fact-finder was entitled to give greater weight in this regard to this objective medical evidence, objective evidence which did not support Starner's claims of total disability. Recognizing that the "substantial evidence" standard of review prescribed by statute is a deferential standard of review, Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004), which is met by less than a preponderance of the evidence but more than a mere scintilla of proof, Richardson v. Perales, 402 U.S. 389, 401 (1971), we find that the ALJ's decisions assessing this competing proof regarding the plaintiff's's ability to function despite his various claimed physical impairments was supported by substantial evidence and may not now be disturbed on appeal.

Beyond being adequately supported by the evidence, the ALJ's decision must must also be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. Thus, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). In this case we find that the ALJ's decision provided a full statement of the critical evidence, individually assessed that evidence, and adequately explained which proof was found persuasive, and which evidence was discounted. Since the ALJ's decision adequately addressed this conflicting and equivocal medical evidence, the medical evidence cited in this appeal did not suggest that the ALJ's ultimate conclusion was unsupported by substantial evidence, and there is no legal requirement that the ALJ discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), Starner's complaints about the manner in which the ALJ assessed the evidence do not provide grounds for setting aside the ALJ's judgment when we scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

In particular, we find that the ALJ did not err by failing to independently address the third party report prepared by Starner's father. (Tr. 219-227.) This report, like much of the medical evidence, was highly equivocal and did not materially advance Starner's disability claim. Indeed, in many respects the third party report supported a finding that Starner could perform light work since the report stated that Starner could drive, use a computer, manage money, engage in activities of daily living, cook, shop, and was good at following written and spoken instructions. (Id.)

Given the unpersuasive quality of this proof, the ALJ did not err by failing to specifically discuss this particular report. Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).

### 3. The ALJ Also Properly Addressed the Evidence Relating to Starner's Emotional States

Finally, in this appeal, Starner attacks the ALJ's treatment of his emotional distress, insisting that inadequacies in the ALJ analysis of this component of his health compels a remand of this case. This issue presents a closer question since there is some evidence in the record which would have supported a finding of severe emotional impairment for Starner, given the GAF score of 44 assigned to Starner by one consulting doctor. However, mindful of the fact that our task is not to substitute

our judgment for the ALJ, but only to determine whether the ALJ's decision rests on substantial evidence, we should decline the invitation to set aside the ALJ decision on these grounds since the record of these proceedings, viewed as a whole, reveals that the ALJ gave a conscientious and thorough consideration to these matters.

Thus, at the outset the state agency conducted a psychological assessment of Starner, a course favored by social security regulations. 20 C.F.R. § 404.1520a (e)(4). State agency psychologist, Roger Fretz, Ph.D., assessed Starner's work capacity in June 2009, (Tr. 773-76.), opining that Starner could meet the demands of competitive work on a sustained basis despite his limitations. (Tr. 776.) In this regard, Dr. Fretz noted that Starner was able to perform activities of daily living, and spent expensive time on the computer; (Tr. 775.) and determined that the evidence indicated that Starner was either not significantly limited or only moderately limited in all areas of mental functioning. (Tr. 773-74.) Dr. Fretz also found that Starner could carry out very short and simple instructions, maintain regular attendance and be punctual. (Tr. 775.) According to Dr. Fretz Starner's anxiety disorder caused mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; and moderate limitations in maintaining concentration, persistence, or pace, limitations which did not rise to the level of disabling conditions. (Tr. 782, 787.) This examination, therefore, confirmed that, while Starner suffered from social

anxiety and other stress related disorders, he retained the ability to function in certain workplace settings. During a second evaluation of Starner conducted by Dr. Le Starner reported a history of mood disorder, and exhibited nervousness during the evaluation, but denied having unremitting sadness, apathy, anhedonia, insomnia, or changes in appetite, and Dr. Le observed no clear periods of euphoria or classic manic symptoms. (Tr. 761.) Dr. Le further noted that Starner was not treating with a psychiatrist or counselor. (Tr. 761.) Rather, Dr. Le described Starner as pleasant, alert, and cooperative during the examination, and found that his thought process was as coherent and logical. (Tr. 764.) On the basis of these clinical observations Dr. Le concluded that Starner could perform light work with some limitations.

The ALJ properly relied upon this objective evidence, and these clinical findings, to conclude that Starner's condition was not wholly disabling. The ALJ also carefully considered, but rejected, the single GAF score of 44 reported by Dr. Tardibuono, finding that this GAF score was not consistent with other clinical data, was based largely upon self-reporting by Starner, and was contradicted by other reports of Starner's level of social functioning. The ALJ correctly noted that Starner's emotional conditions had not required hospitalization, periods of decompensation, any medical intervention by specialists, or prolonged and sustained treatment. The absence of such evidence in the medical record all supported the

ALJ's conclusion that this isolated GAF score overstated the degree of Starner's

impairment, a conclusion which reflected the type of fact-finding by ALJs endorsed

by the United States Court of Appeals for the Third Circuit in the past when that court

affirmed the denial of benefits in cases in which claimants presented similar GAF

scores.    See, e.g., Rios v. Comm'r of Soc. Sec., 444 F. Appx. 532 (3d

Cir.2011)(affirming Commissioner where, the record indicated that the plaintiff was

assessed three GAF scores at different times of 50, 50, and 50–55 respectively);

Gilroy v. Astrue, 351 F.App'x 714 (3d Cir. 2009)(affirming ALJ decision denying

disability benefits despite GAF of 45); Glover v. Astrue, CIV.A. 10-901, 2011 WL

1562267 (E.D. Pa. Mar. 31, 2011) report and recommendation adopted, CIV.A. 10-

901, 2011 WL 1597692 (E.D. Pa. Apr. 26, 2011(lowest identified GAF rating was

48).[2]

Thus, in this case, fairly construed, the ALJ's conduct of these proceedings

paid full fidelity to the benchmarks set by law for assessing mental health claims.

---

[2]In an effort to bolster the weight which should be given to Dr.
Tardibuono's opinion, the plaintiff suggests that this opinion should have been
considered as a treating physician opinion.  However, it is evident that Dr.
Tardibuono was not Starner's treating physician but simply conducted a
consultative examination.  Indeed, this argument highlights one of the evidentiary
shortcomings in Starner's case, the lack of any well-documented treating physician
opinion evidence supporting this disability claim, and the absence of any evidence
of extensive, on-going or specialized treatment or hospitalization for Starner's
emotional distress.

Recognizing that the ALJ had "a duty to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work," Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999), the ALJ developed this record through psychological assessments of Starner and then this information full and fair consideration before concluding that Starner's mental state was not disabling.  The ALJ then engaged in a thorough and dispassionate assessment of all of the evidence, before ultimately discounting Dr. Tardibuono's findings as an outlying opinion based upon other clinical and opinion evidence.  Further the ALJ's opinion weighed all of the evidence rating the degree of limitation experienced by the claimant in activities of daily living; social functioning; and concentration, persistence, or pace, as well as assessing any episodes of decompensation before finding that Starner was not disabled.  20 C.F.R. § 404.1520a(c).

Viewed in this light, Starner's complaints regarding the thoroughness of the treatment of these mental health issues by the ALJ are unpersuasive.  Since it is well settled that "the mere presence of a mental disturbance does not automatically indicate a severe disability" and the evidence relating to Starner' mental health plainly was not "ignored by the ALJ, " Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999), we find that the ALJ did what she was required to do: She gave "claimant's

mental health impairments . . . serious consideration . . . in determining whether [the] claimant [wa]s disabled." <u>Plummer v. Apfel</u>, 186 F.3d 422, 432 (3d Cir. 1999).

Construed in this way, the ALJ fully discharged her duty and properly exercised her discretion in this case by collecting, reviewing and assessing the various medical opinions, diagnostic tests, and clinical impression, and evaluating those medical results in light of the plaintiff's description of his impairments and limitations. In short, the record in this matter shows that the claimant's complete medical history was adequately developed on the record, but that record–which included several assessments that found Starner was not prevented from working due to his emotional impairments–permitted a finding that Starner was not disabled. Recognizing that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)," <u>Johnson</u>, 529 F.3d at 200; and consists of less than a preponderance of the evidence but more than a mere scintilla of proof, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); we conclude that there was substantial evidence which supported the ALJ findings in this case. Therefore, those findings should not be disturbed on appeal.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Commissioner's decision be upheld.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of October 2013.


*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge